UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

ELISSA FODY,                          )
                                      )
            Plaintiff,                )        Case No. 11 C 8926
                                      )
v.                                    )        Magistrate Judge Sidney I. Schenkier
                                      )
MICHAEL ASTRUE,                       )
Commissioner of Social Security,      )
                                      )
            Defendant.                )

## MEMORANDUM OPINION AND ORDER[1]

Elissa Fody seeks an order reversing and remanding the final decision of the Commissioner

of Social Security ("Commissioner") denying her application for Supplemental Security Income

("SSI") and Disability Insurance Benefits ("DIB") under Title II of the Social Security Act (doc. #

21: Mot. for Summ. J.). The Commissioner has filed a cross-motion for summary judgment (doc.

# 23), in which he asks the Court to affirm the denial of benefits. For the reasons set forth below,

the Court grants Ms. Fody's motion, and we reverse and remand for further proceedings consistent

with this opinion.

## I.

We begin with the procedural history of this case. Ms. Fody was 56 years old when she filed

her application for DIB and SSI in May and June 2009, respectively (R. 145-51). She alleges a

disability onset date of February 5, 2009, due to arthritis, diabetes, three knee replacements,

depression, anxiety, hip problems, neuropathy in her feet, kidney infections, and high blood pressure

(R. 64). Her claims were denied initially on September 18, 2009 (R. 60-68), and upon

---

[1]On February 29, 2012, by consent of the parties and in accordance with 28 U.S.C. § 636(c), this matter was reassigned to this Court for all further proceedings, including the entry of final judgment (doc. # 11).

reconsideration on January 15, 2010 (R. 73-82). Ms. Fody requested a hearing before an Administrative Law Judge ("ALJ"), which was held on December 6, 2010 (R. 27). ALJ Roxanne J. Kelsey issued her decision denying benefits on January 21, 2011 (R. 9-21). Ms. Fody timely requested review of the ALJ's decision, which the Appeals Council denied on October 19, 2011 (R. 1). Because the Appeals Council declined Ms. Fody's request for review, the ALJ's ruling represents the Commissioner's final decision. *Roddy v. Astrue*, – F.3d –, 2013 WL 197924, at *4 (7th Cir. Jan. 18, 2013)

## II.

We next summarize the administrative record. We set forth the general background in Part A, review the medical record in Part B, discuss the hearing testimony in Part C, and address the ALJ's written opinion in Part D.

## A.

Ms. Fody was born on October 4, 1952 (R. 31). She is five feet, five inches tall, and at the time of the hearing, she weighed about 217 pounds, and was living with her 90 year old mother and her sister (R. 37, 52-53). Ms. Fody has a high school education, and has worked as an administrative assistant, sales clerk, and receptionist (R. 31). Most recently, she worked as a temporary district sales manager for Avon from the end of September 2008 through February 2009 (R. 31-33). Since her alleged disability onset date of February 5, 2009, she tried working as a cashier, but she could not perform the duties required (*Id.*).

## B.

Ms. Fody was first diagnosed with diabetes in 2003 (R. 17). She had three knee replacement surgeries between 2003 and 2007, two surgeries on her right knee, and one on her left knee (R. 342).

2

In August 2008, before her current disability claim was filed,[2] her internist, Dr. Mohin Samaraweera, reported that her left knee had significant deformity and limited extension and flexion, as well as tenderness, pain, stiffness, and swelling (R. 281-82). Her right knee flexion was also limited (*Id.*). Ms. Fody limped, but she did not need an assistive device (*Id.*). Dr. Samaraweera stated that Ms. Fody could sit or stand for one to two hours at a time, but could only walk or stand for five minutes (*Id.*). She had no limitations in her upper extremities (*Id.*). At that time, Ms. Fody weighed 251 pounds (R. 287). She had no problems in cognitive functioning or reasoning (*Id.*).

On August 27, 2008, Richard Bilinsky, M.D., completed a physical residual functional capacity ("RFC") assessment of Ms. Fody at the request of the Bureau of Disability Determination Services ("DDS") (R. 296). He opined that Ms. Fody could frequently lift and/or carry 10 pounds, stand and/or walk at least 2 hours in an 8 hour work day, sit about 6 hours in an 8 hour workday with periodic alternating between sitting and standing to relieve pain or discomfort, and had limited ability to push and/or pull in her lower extremities (R. 290). She could occasionally climb ramps and stairs, balance, and stoop, but never climb ladders or scaffolds, kneel or crouch (R. 291). Dr. Bilinsky found no manipulative, visual, communicative, or environmental limitations (R. 292-93).

The next medical report in the record is dated February 5, 2009, the alleged onset date, when Ms. Fody was admitted for two days to the hospital with alcoholism and alcohol withdrawal (R. 299, 432). She saw a psychiatrist at the hospital because she was feeling depressed and stressed (R. 300).

On August 30, 2009, Ms. Fody was examined by state agency psychologist, John R. Brauer, Psy.D., at the request of DDS (R. 314). He diagnosed her with major depression and alcohol

---

[2]One of the reports in the record makes reference to an earlier filed disability claim, but the Court has no further information on that earlier-filed claim.

dependence (in remission by her own report), but found her concentration, attention, and judgment to be within normal limits (R. 316). On September 3, 2009, state agency psychologist Tyrone Hollerauer, Psy.D., assessed Ms. Fody's psychiatric RFC (R. 321). He found no limitation in her activities of daily living ("ADLs"); no limitation in maintaining concentration, persistence, or pace; no episodes of decompensation, and only mild limitation in maintaining social functioning (R. 328).

On September 5, 2009, Stanley Simon, M.D., conducted an internal medicine examination of Ms. Fody for DDS (R. 341). He reported that Ms. Fody had tenderness in joints on both hands, full range of motion in her fingers, and normal grip strength (R. 344). She had tenderness and decreased range of motion in both knees, her left hip, and her spine (*Id.*). She was only able to squat partially because of knee and hip pain, but she was able to get on and off the examination table without difficulty (*Id.*). She had normal range of motion in her shoulders, elbows, and ankles (*Id.*). Ms. Fody walked with a slight limp and used a cane, though it was not prescribed (*Id.*).

Another state agency doctor, Frank Jimenez, M.D., completed a physical RFC assessment of Ms. Fody on September 17, 2009 (R. 339). Dr. Jimenez concluded that Ms. Fody could occasionally lift and/or carry 20 pounds; frequently lift and/or carry 10 pounds; and stand, walk, and/or sit (with normal breaks) for a total of about 6 hours in an 8-hour workday, with an unlimited ability to push and/or pull (R. 333). Dr. Jimenez opined that Ms. Fody was frequently limited in balancing and stooping but only occasionally limited in climbing ramps, stairs, ladders, ropes, and scaffolds; kneeling; crouching; and crawling (R. 334).

On October 8, 2009, Ms. Fody's treating physician, Dr. Samaraweera, also filled out an RFC questionnaire for Ms. Fody (R. 107). Dr. Samaraweera wrote that Ms. Fody has pain and muscle weakness in her legs; however, she can sit two hours and stand 45 minutes at one time (R. 107-08).

4

Depression, anxiety, and emotional factors contribute to Ms. Fody's symptoms and limitations (R. 107). Dr. Samaraweera commented that Ms. Fody was a malingerer "to some extent," and that, "to some extent," her impairments are reasonably consistent with her symptoms and functional limitations (*Id.*). He also opined that Ms. Fody's symptoms would interfere "constantly" with the attention and concentration needed to perform even simple work tasks, and she is incapable of performing even "low stress" jobs (R. 108).

Dr. Samaraweera stated that in a normal 8-hour work day, Ms. Fody could stand/walk less than 2 hours and sit about 2 hours; would need to walk around every 30 minutes, for about 5 minutes each time; and would need to take unscheduled breaks every two hours (R. 108-09). Her legs do not need to be elevated with prolonged sitting (R. 109). Dr. Samaraweera did not state whether Ms. Fody needed a cane to stand or walk (*Id.*). He indicated that Ms. Fody could never climb ladders; rarely could lift/carry less than 10 pounds, crouch/squat, or climb stairs; and occasionally could twist and stoop (*Id.*). Dr. Samaraweera stated that she has no significant limitations with reaching, handling, or fingering (*Id.*). He then indicated, without explanation, that Ms. Fody should avoid exposure to all environmental irritants (R. 110).

In January 2010, state agency doctors Julio Pardo, M.D., and Jerrold Heinrich, Ph.D., affirmed the state agency physical and mental RFC determinations from September 2009 (R. 348-49). In so doing, they evidently had the benefit of Dr. Samaraweera's October 2009 report. In their own report, Drs. Pardo and Heinrich noted that Dr. Samaraweera believed Ms. Fody to be, to some extent, a "malingerer" and that her impairments are only "to some extent" reasonably consistent with her symptoms and alleged functional limitations (R. 349). Dr. Pardo concluded that Dr. Samarweera overestimated the severity of Ms. Fody's functional limitations, and he found that Dr. Samaraweera's

report was both internally inconsistent and inconsistent with the totality of evidence in the record (*Id.*).

Since then, Ms. Fody has had several medical incidents due to her alcoholism and diabetes. On January 19, 2010, she was taken to the emergency room after she was found drunk and slumped over in her car (R. 357). On March 12, 2010, she was admitted to the hospital for hypoglycemia (low blood sugar) and alcoholism (R. 406). On March 16, 2010, Ms. Fody was again brought to the hospital because she fell after drinking heavily (R. 373-75, 390).

## C.

At the administrative hearing on December 6, 2010, Ms. Fody testified about the "constant pain" she suffers in her back, hips, legs, and radiating to her ankles (R. 35, 46). She rated her pain at a seven out of ten after taking her medications (R. 45). The pain in her feet starts out as pins and needles, then may progress to shooting, stabbing pains, or her feet fall asleep and she has little feeling in them (R. 51-52). Ms. Fody stood up about thirty minutes into the hearing, and she stated that she can stand in one spot for 15 minutes (R. 47-48). She could circle the room twice without pain, and walk from her car to a store, but after half a block of walking, her pain gets uncomfortable (*Id.*). Her cane helps her walk, especially when the weather is cold and her pain increases (R. 35). She also testified that she has arthritis and the beginning of diabetic neuropathy in her hands (R. 42).

Ms. Fody testified that she also has high blood pressure, and "was struggling with depression for a while, on and off depression medications" due to her "extenuating circumstances," including losing her home, job, and vehicle (R. 36-37). At the time of the hearing, her depression was a "little better," and she was not taking antidepressants because she did not feel they helped her, and they made her foggy (R. 37). She never sought counseling or other treatment for her depression (*Id.*).

Ms. Fody takes Glucophage, Synthroid, Tramadol (for pain), and Benazepril for high blood pressure (R. 39). She does not suffer side effects from these medications, but if she fails to take the pain medicine, she has debilitating pain, and if she fails to take her diabetes medication "religiously" and watch what she eats, she suffers from diabetes-related ailments (R. 40).

Ms. Fody makes her bed, showers, gets ready, and fixes breakfast by herself (R. 43). She has some trouble getting in and out of the shower because of her left leg problems and arthritis in her left hip (R. 40-41). She does not need to nap during the day, but she must sit with her feet elevated – extended hip length – for at least 30 minutes every few hours; otherwise, the swelling and pain in her legs get worse (R. 41-42). Ms. Fody's sister takes primary care of their elderly mother (R. 38). Ms. Fody will grocery shop with her sister, but will not put things in the cart or carry the bags (*Id.*). She can lift about 10 pounds – a gallon of milk – and put it into the car, but she cannot carry it upstairs or walk around with it without pain (R. 47).

She does not have a car, but she can drive an automatic (the clutch on a stick-shift is too hard on her left leg) (R. 38-39). Ms. Fody's license was suspended for six month in February 2009 for DUI (R. 39). She testified that her last alcoholic drink was in March 2010 (R. 49).

Despite numbness and tingling in her hands, she can use a computer, type, put on makeup, and do silk floral design (R. 48-49). She runs her Avon business through her phone and computer, making calls and using her laptop (sitting with her legs up) (R. 43). She watches television, including old movies and the news (R. 44). Ms. Fody attends AA meetings and sings in the church choir when she has access to transportation (R. 45). She does not have problems being around people (R. 49).

The Vocational Expert ("VE") noted two of Ms. Fody's previous jobs were sedentary: administrative assistant and receptionist (R. 54-55). The VE opined that an individual who needed

to stand and stretch for 30 seconds after 30 minutes of sitting, and would need to elevate her feet to waist level during normally scheduled breaks, would be able to perform Ms. Fody's past work (R. 56). However, an individual who needed to elevate her feet to waist level once every three hours for 30 minutes would not be able to perform full-time work (*Id.*). In addition, a person who had to stand at will for 10 minutes of every hour – and thus be off-task from her sedentary job – could not sustain full-time employment (R. 57-58).

### D.

In her written opinion, the ALJ found that Ms. Fody was not disabled after evaluating her claim under the five-step sequential process detailed in 20 C.F.R. § 404.1520(4). The ALJ found that Ms. Fody satisfied Step 1: she has not engaged in substantial gainful activity since February 5, 2009, the alleged onset date. At Step 2, she found that Ms. Fody has the following severe impairments: osteoarthritis of the hip, knee, and back; diabetes, obesity, and bilateral total knee replacements (R. 11). The ALJ concluded that Ms. Fody's alleged mental impairments caused only minimal limitation to Ms. Fody and were therefore not severe (R. 12). For purposes of Step 3, the ALJ found that Ms. Fody's impairments do not meet or medically equal a listed impairment (R. 14).

Between the third and fourth steps, the ALJ concluded that Ms. Fody's RFC allows her to perform sedentary jobs that would permit her to stand and stretch for 30 seconds every 30 minutes and elevate her feet to waist level during breaks (R. 15). The ALJ discounted Ms. Fody's testimony because treatment for her pain was "minimal and conservative" (limited to oral pain medications), her doctor stated that she did not need a cane to ambulate effectively, she continued to do Avon work, and she was able to care for herself and complete household chores (R. 18-19).

The ALJ examined the opinions of state agency internal medicine doctors Simon, Jimenez, and Pardo. She found their opinions were consistent with the evidence of record, and she gave great weight to Dr. Jimenez's opinion and "considerable" weight to Dr. Pardo's opinion (R. 20). The ALJ gave "little weight" to the August 16, 2008 opinion of Ms. Fody's treating doctor, Dr. Samaraweera, because she determined his findings were internally inconsistent and inconsistent with the totality of evidence, and that they overestimated the severity of Ms. Fody's functional limitations (R. 19).

At Step 4, the ALJ found that under the RFC she assigned, Ms. Fody was capable of performing her past relevant work as an administrative assistant and receptionist (R. 20). Thus, the ALJ concluded that Ms. Fody was not disabled (R. 21).

### III.

Ms. Fody contends that the ALJ's opinion contains several errors that mandate remand. We focus our discussion on one of these alleged errors – that the ALJ failed to consider Dr. Samaraweera's second report, dated October 8, 2009 – which we agree requires remand.

It is well-established that "[a]n ALJ must consider all medical opinions in the record," *Roddy*, 2013 WL 197924, at *5, and the court "cannot uphold an administrative decision that fails to mention highly pertinent evidence." *Parker v. Astrue*, 597 F.3d 920, 921 (7th Cir. 2010). Although the ALJ is not required to address in writing every piece of evidence or testimony presented, the ALJ's failure to address a medical opinion "is especially troubling" where it is the opinion of a treating physician. *Roddy*, 2013 WL 197924, at *5.

The Commissioner does not dispute that the ALJ overlooked this report; however, the Commissioner argues that this was harmless error. Specifically, the Commissioner contends that "[a]lthough the ALJ did not explicitly address Dr. Samaraweera's subsequent October 2009 opinion,

the same rationale" that the ALJ applied in deciding to reject Dr. Samaraweera's August 2008 opinion would apply to the later opinion as well (doc. # 24: Comm'r Br. at 13). Thus, the Commissioner argues that this Court should follow the Seventh Circuit law that "we will not remand a case to the ALJ for further specification where we are convinced that the ALJ will reach the same result" (Comm'r Br. at 13, citing *McKinzey v. Astrue*, 641 F.3d 884, 892 (7th Cir. 2011)). For the reasons that follow, we do not agree that the ALJ's omission can be dismissed as harmless.

## A.

We are skeptical that an ALJ's failure to address at all the opinion of a treating physician ever can be harmless. *See Roddy*, 2013 WL 197924, at *5 ("The ALJ's failure explicitly to address Dr. Wright's opinion about Roddy's ability to work is especially troubling because Dr. Wright was Roddy's treating physician"). But, to be sure, it cannot be swept aside as harmless here. The October 2009 report is the only opinion offered by Ms. Fody's treater, Dr. Samaraweera, that post-dates the alleged onset date of her disability. And, if accepted, Dr. Samaraweera's opinion as expressed in the October 2009 report might render Ms. Fody unable to perform her prior work – or, for that matter, any work. Dr. Samaraweera opined that Ms. Fody would need to stand for 5 minutes after sitting for 30 minutes (R. 108). The VE testified that a person who must stand at will for 10 minutes every hour could not sustain full-time employment (R. 57-58). An ALJ must give controlling weight to the opinion of a treating physician unless she offers a "sound explanation" for declining to do so. *Roddy*, 2013 WL 197924, at *5. Here, the ALJ gave no reason for rejecting Dr.

Samaraweera's opinions in the October 2009 report; indeed, she gave no indication that she ever

considered it. We reject the proposition that this omission was harmless.[3]

## B.

Nor do we find convincing the government's suggestion that we paper over that omission by

simply assuming that the ALJ would have rejected Dr. Samaraweera's October 2009 opinion based

on the same analysis she employed in rejecting his August 2008 opinion. That argument runs afoul

of the well-settled principle, established in *SEC v. Chenery Corp.*, 319 U.S. 80, 87-88 (1943), and

invoked repeatedly by the Seventh Circuit in social security cases, that "what matters are the reasons

articulated *by the ALJ*," not the *post hoc* rationale supplied by the Commissioner. *Jelinek v. Astrue*,

662 F.3d 805, 812 (7th Cir. 2110) (emphasis in original). The Seventh Circuit has cited this

principle twice in the last month, when reversing two district court decisions that had affirmed ALJ

findings that claimants were not disabled. *See Roddy*, 2013 WL 197924, at *6 ("the Commissioner

cannot defend the ALJ's decision using this rationale directly, or by invoking an overly broad

conception of harmless error, because the ALJ did not employ the rationale in his decision"); *Hughes

v. Astrue*, – F.3d –, 2013 WL 163477, at * (7th Cir. Jan. 16, 2013) (stating that the government's

attempt to defend an ALJ's decision by supplying reasoning not used by the ALJ

"[c]haracteristically" violated the *Chenery* doctrine). These most recent Seventh Circuit decisions

make clear that if the Commissioner chooses to defend an ALJ's opinion, he must do so based on

---

[3]The Commissioner points out that the ALJ considered the January 2010 opinion of state agency physician Dr. Pardo, who did consider Dr. Samaraweera's October 2009 report (Comm'r Br. at 13). The ALJ cited Dr. Pardo's opinion that Dr. Samaraweera's findings were "inconsistent with the totality of evidence in the file," and that they appeared to be "an overestimate of the severity of the claimant's functional limitations" (R. 19; *see also* R. 349). The ALJ's citation to Dr. Pardo's opinion, however, does not take the place of the ALJ herself considering Dr. Samaraweera's October 2009 opinion and explaining why she declined to adopt it.

the opinion the ALJ wrote, not on some hypothetical opinion that the Commissioner argues, in hindsight, the ALJ might have written.

## C.

Furthermore, in assuming that the ALJ would have applied the same analysis she used in rejecting Dr. Samaraweera's August 2008 report to reject his opinions in a separate report issued 14 months later, the government ignores the substantive differences between the reports. In the October 2009 report, Dr. Samaraweera opined that Ms. Fody has pain and muscle weakness in her legs, but can sit two hours and stand 45 minutes at one time. He also opined that in a normal 8-hour work day, Ms. Fody could stand/walk less than 2 hours and sit about 2 hours, and she would need to walk around every 30 minutes, for about 5 minutes each time, and take unscheduled breaks every two hours (R. 107-09). Further, he noted that she has no significant limitations with reaching, handling, or fingering, and her legs do not need to be elevated with prolonged sitting (*Id.*). Dr. Samaraweera did not indicate whether Ms. Fody needed an assistive device to walk (*Id.*). In the August 2008 report, by contrast, Dr. Samaraweera stated that Ms. Fody could sit or stand for one to two hours at a time, but could only walk or stand for five minutes (R. 282). She walked with a limp, but did not need an assistive device (*Id.*). He also noted that she had deformity and swelling in her knees, as well as pain, tenderness, and stiffness (R. 281).

In short, Dr. Samaraweera's October 2009 opinion suggests that Ms. Fody has limitations that are less extreme than those he offered in the August 2008 opinion. While – like the Commissioner – we note inconsistencies within both of Dr. Samaraweera's opinions (Comm'r Br. at 13), this does not lead inexorably to the conclusion that the ALJ would have applied the same analysis and the same weight to Dr. Samaraweera's two opinions.

12

**D.**

The ALJ's omission of any mention of Dr. Samaraweera's October 2009 report is curious

in light of the fact that her opinion painstakingly reviewed the reports of other medical professionals.

In the 592-page administrative record in this case, the medical evidence is grouped into section F,

which contains exhibits one through twelve (*see* Court Tr. Index). The ALJ reviewed the medical

opinions from this section, including: Dr. Samaraweera's report from August 16, 2008 (R. 18 (citing

Ex. 1F, R. 278-88)); consultative mental health examiner Dr. Brauer's report from August 31, 2009

(R. 12 (citing Ex. 4F, R. 312-17)); stage agency mental health consultant Dr. Hollerauer's September

3, 2009 opinion (R. 13 (citing Ex. 5F, R. 318-31)); internal medicine consultant Dr. Simon's

September 5, 2009 opinion (R. 17 (citing Ex. 7F, R. 341-46)); state agency medical consultant Dr.

Jimenez's September 17, 2009 opinion (R. 20 (citing Ex. 6F, R. 332-39)); state agency mental health

consultant Dr. Heinrich's January 6, 2010 opinion (R. 13 (citing Ex. 8F, R. 347-49)); and state

agency medical consultant Dr. Pardo's January 13, 2010 opinion (R. 20 (citing Ex. 8F, R. 347-49)).[4]

By contrast, Dr. Samaraweera's October 8, 2009 opinion is included in Section B, Exhibit

14, of the record, which is labeled "Attorney/Representative-Supplied Evidence, dated 12/17/09"

(*see* Court Tr. Index, R. 104-12).[5] Ms. Fody hypothesizes that "[t]he ALJ may have overlooked this

report because the Agency mistakenly associated it with Agency correspondence rather than medical

evidence" (Pl.'s Mem. at 8). Perhaps that hypothesis explains why the ALJ, who diligently reviewed

---

[4]The only medical opinion from Section F that the ALJ excluded from her opinion was a state agency doctor's physical RFC opinion from August 27, 2008, which preceded the alleged onset date in this case (*see* Court Tr. Index, 2F).

[5]Exhibit B also included a letter from Dr. Samaraweera (not mentioned by Ms. Fody) dated September 12, 2009, stating that Ms. Fody has chronic kidney disease, diabetes, hypertension and dyslipidemia, and that she "is unable to stand for a long time or climb stairs or carry objects over 50 lbs" (R. 106).

a substantial volume of other medical evidence, did not address the October 2009 report from Ms. Fody's treating physician. Regardless of the reason for its omission, the ALJ's failure to consider the October 8, 2009 report mandates remand.

That said, this Court is left wondering at the wisdom of fully briefing a claimant's motion to reverse and remand when such an obvious (even if inadvertent) error is present in the ALJ's opinion. Just as remanding a case to the ALJ where a court is convinced the ALJ would reach the same result "would be a waste of time and resources for both the Commissioner and the claimant," *McKinzey*, 641 F.3d at 892, so too is briefing a motion to remand where an error is obvious.

## CONCLUSION

For the reasons set forth above, we grant Ms. Fody's motion to reverse and remand (doc. # 21), and deny the Commissioner's cross-motion to affirm (doc. # 23). The case is reversed and remanded for further proceedings consistent with this opinion. While we must remand here, we do not suggest that Ms. Fody inevitably must be found disabled. That is a decision for the ALJ to make based on an analysis of all relevant evidence. The case is terminated.

ENTER:

**SIDNEY I. SCHENKIER**
**United States Magistrate Judge**

Dated: February 4, 2013

14